UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MONROE J. WALTON, III,

        Petitioner,

  v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 20-cv-1051-pp

---

**ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY AND DISMISSING CASE WITH PREJUDICE**

---

On July 13, 2020, the petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255, challenging his conviction in United States v. Monroe J. Walton III, Case No. 17-cr-108 (E.D. Wis.). Dkt. No. 1. The motion asserts that the petitioner's sentence violates the United States Supreme Court's decision in United States v. Davis, __ U.S. __, 139 S. Ct. 2319 (2019). Id. at 3. Because the petitioner plainly is not entitled to relief, the court denies the §2255 motion and dismisses the case.

**I.    Background**

    A.    Underlying Case

        1.    *Indictment*

On June 13, 2017, the grand jury returned an indictment against the petitioner, Javon Walton and Devontea Walton. United States v. Monroe Walton

1

III, Case No. 17-cr-108 (E.D. Wis.), Dkt. No. 1. Count One charged all three with conspiring to (1) commit Hobbs Act robberies in violation of 18 U.S.C. §1951, (2) take a motor vehicle by force, violence and intimidation with the intent to cause death and serious bodily harm in violation of 18 U.S.C. §2119(1) and (3) brandish, carry and use a firearm during and in relation to and to possess a firearm in furtherance of crimes of violence in violation of 18 U.S.C. §924(c). Id. at 1-2. Count Two charged the petitioner and Javon Walton with the April 9, 2017 Hobbs Act robbery of a Sprint store in violation of 18 U.S.C. §§1951(a) and 2. Id. at 3. Count Three charged the petitioner and Javon Walton with the April 14, 2017 Hobbs Act robbery of a Metro PCS store in violation of 18 U.S.C. §§1951(a) and 2. Id. at 4. Count Four charged the petitioner and Devontea Walton with the May 5, 2017 Hobbs Act robbery of a US Cellular store in violation of 18 U.S.C. §§1951(a) and 2. Id. at 5. Count Five charged the petitioner and Devontea Walton with knowingly using, carrying and brandishing a firearm during and in relation to that crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. Id. at 6. Count Six charged the petitioner and Devontea Walton with taking a motor vehicle by force, violence and intimidation with the intent to cause death and serious bodily harm in violation of 18 U.S.C. §§2119(1) and 2. Id. at 7. Count Seven charged the petitioner and Devontea Walton with knowingly using, carrying and brandishing a firearm during and in relation to *that* crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. Id. at 8.

2.  *Plea agreement*

On September 25, 2018, the petitioner (represented by Attorney Craig Johnson) signed a plea agreement. Dkt. No. 77 at 15. The plea agreement was filed on October 24, 2018. Dkt. No. 77. The agreement stated that the petitioner was pleading to Counts Two, Three, Four and Five of the indictment. Id. at ¶4. In the agreement, the petitioner acknowledged that he had read and fully understood "the nature and elements of the crimes with which he ha[d] been charged" and that his attorney fully explained "the terms and conditions of the plea agreement." Id. at ¶3. The petitioner acknowledged, understood and agreed that he was guilty of the offenses in Counts Two, Three, Four and Five of the indictment. Id. at ¶5. He admitted that facts attached to the plea agreement established his guilt beyond a reasonable doubt and were true and correct. Id. He stated that he understood and agreed that the maximum term of imprisonment for Counts Two, Three and Four was twenty years in prison, a $250,000 fine, three years of supervised release and an unspecified amount of restitution; he understood and agreed that Count Five carried a "[m]andatory minimum of seven years and up to life in prison" consecutive to any other sentence, a maximum of five years of supervised release and a $250,000 fine. Id. at ¶6. The petitioner acknowledged, understood and agreed that he had "discussed the relevant statute as well as the applicable sentencing guidelines with his attorney." Id. at ¶7.

The agreement also laid out the elements of the charges. Id. at ¶¶9-10. It said that the parties understood and agreed that in order to sustain the Hobbs

Act robbery charges in Counts Two, Three and Four, the government would have had to prove beyond a reasonable doubt that (1) "[the petitioner] or his accomplice knowingly obtained money from or in the presence of a person," (2) "[the petitioner] or his accomplice did so by means of robbery," (3) "[the petitioner] or his accomplice believed that the person parted with the money because of the robbery," and (4) "the robbery affected interstate commerce." Id. at ¶9. The parties confirmed that they understood and agreed that in order to sustain the charge of brandishing a firearm during a crime of violence in Count Five, the government would have been required to prove that (1) the petitioner committed the Hobbs Act robbery alleged in Count Four and (2) "[the petitioner's] accomplice used and brandished a firearm during that crime, and [the petitioner] had advance knowledge that his accomplice possessed a firearm." Id. at ¶10.

The petitioner acknowledged and agreed "that his attorney . . . discussed the applicable sentencing guidelines provisions with him to [the petitioner's] satisfaction." Id. at ¶13. He acknowledged and understood "that the sentencing guidelines recommendations contained in this agreement [did] not create any right to be sentenced within any particular sentence range, and that the court [might] impose a reasonable sentence above or below the guidelines range. Id. at ¶15. The parties acknowledged, understood and agreed that the sentencing court could "consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct [was] not the subject of the offenses to which [the petitioner] [was] pleading guilty." Id. at ¶16. "The parties agree[d] to

4

recommend to the sentencing court that the applicable base offense level for the offense charged in Counts Two, Three and Four" was 20. Id. at ¶17. They agreed that the government would recommend that "a two level increase under Sentencing Guidelines Manual § 2B3.1(b)(2) [was] applicable to the offense level for the offense charged in Count Two because a threat of death was made." Id. at ¶18.

"The parties agree[d] to recommend . . . that a five-level increase under Sentencing Guidelines Manual § 2B3.1(b)(2) [was] applicable to the offense level for the offense charged in Count Three because the offense level involved the use of a firearm." Id. at ¶19. The parties understood and acknowledged "that the government agreed to recommend . . . a three-level increase for the multiple counts involved under Sentencing Guidelines Manual § 3D1.4 [was] applicable to determine the combined offense level of 28 for the offenses charged in Counts Two, Three, and Four." Id. at ¶20. The government agreed to recommend a two-level decrease under U.S.S.G. §3E1.1(a) for the petitioner's acceptance of responsibility, "but only if [the petitioner] exhibit[ed] conduct consistent with the acceptance of responsibility," including but not limited to the petitioner's "voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing." Id. at ¶21. They agreed that if the court determined at the time of sentencing that the defendant was entitled to that two-level reduction, the government would make a motion under U.S.S.G. §3E1.1(b) for an additional one-level increase because of the defendant's timely agreement to plead guilty. Id.

5

The government agreed to recommend a sentence "at the low end of the guideline range applicable to the Hobbs Act robbery counts, as determined by the sentencing court." Id. at ¶24. It further agreed not to object to petitioner's "request that the sentence on Counts Two, Three, and Four run concurrent to his probation revocation sentence in Waukesha County Circuit Court Case Number 2015CF1551." Id. The parties acknowledged and understood "that the sentence on Count Five must run consecutive to any other sentence, including a state sentence." Id. The parties acknowledged, understood and agreed that "[t]he sentencing court [would] make its own determinations regarding any and all issues relating to the imposition of sentence and [might] impose any sentence authorized by law up to the maximum penalties" set forth in the agreement. Id. at ¶25. The petitioner acknowledged, understood and agreed that under the terms of the agreement, he could not "move to withdraw the guilty plea solely as a result of the sentence imposed by the court." Id. at ¶26.

The agreement also contained the petitioner's waiver of rights. Based on the agreement, the petitioner "knowingly and voluntarily waive[d] his right to appeal his sentence in this case and further waive[d] his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. §2255." Id. at ¶35. The petitioner's waiver included "the waiver of any claim that (1) the statutes or Sentencing Guidelines under which [the petitioner] is convicted or sentenced are unconstitutional, and (2) the conduct to which the [the petitioner] has admitted does not fall within the scope of the statutes or Sentencing Guidelines." Id.

"This waiver [did] not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily." Id.

The agreement provided that if the petitioner "violate[d] any term of [the] agreement at any time, engage[d] in any further criminal activity prior to sentencing, or fail[ed] to appear for sentencing, [the] agreement [would] become null and void at the discretion of the government." Id. at ¶42. If the agreement "[was] revoked or if [the petitioner's] conviction ultimately [was] overturned, then the government retain[ed] the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of [the] agreement." Id. Finally, the petitioner acknowledged, understood and agreed that he was "plead[ing] guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set forth in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶43.

      3.     *Change-of-plea hearing*

On December 12, 2018, the court held a change-of-plea hearing. Dkt. No. 87. The petitioner appeared in person with Attorney Johnson. Id. at 1. The court's minutes reflect that during the hour-long hearing, the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him,

7

"recounted that Counts Two, Three, and Four involved maximum prison terms of twenty years, a maximum fine of $250,000, and a maximum of three years of supervised release," recounted that "Count Five carried a mandatory minimum prison term of seven years and a maximum of life, to run consecutively to any other sentence" and mentioned that each charge carried a "mandatory special assessment of $100" for a total of $400. Id. "The court found that [the petitioner] understood his trial rights, the penalties associated with the charge, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id. "The court also found that the defendant entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty and found [the petitioner] guilty of the offense charged in the indictment." Id.

    4.    *Sentencing hearing*

On April 23, 2019, the court conducted the sentencing hearing. Dkt. No. 102. The petitioner appeared in person with Attorney Johnson. Id. at 1. Attorney Johnson confirmed that he and the petitioner had reviewed the presentence investigation report, the addendum and letters from family members; the government confirmed that it also had reviewed those documents. Id. The court explained that the sentencing guidelines in the presentence report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in 18 U.S.C. §3553. Id.

The court calculated a base offense level of 20 under U.S.S.G. §2B3.1(a), "a 2-level enhancement under §2B3.1(b)(2)(F) because co-defendant Javon Walton made a death threat during the offense," "a 5-level enhancement under §2B3.1(b)(2)(E) because one of the co-defendants brandished or possessed a gun," a "3-level enhancement for multiple counts," "a 2-level reduction for acceptance of responsibility" under §3E1.1(a) and a 1-level decrease under §3E1.1(b) for the timeliness of that acceptance, for an adjusted offense level of 25. Id. at 1-2. Neither party objected to that calculation. Id. at 2. The court calculated the petitioner's criminal history category as VI. Id. Again, the petitioner did not object. Id. An adjusted offense level of 25 in criminal history category VI resulted in an advisory sentencing range of one hundred ten to one hundred thirty-seven months on the Hobbs Act robbery counts. Id.

Count Five—the §924(c) gun charge—carried a mandatory minimum penalty of eighty-four months consecutive to any other sentence the court might impose. Id. So the court added eighty-four months to the low and high ends of the advisory range for the Hobbs Act robberies, which resulted in a total advisory sentencing range of one hundred ninety-four to two hundred twenty-one months. Id. Neither party objected to the court's calculation, and each gave their respective sentencing recommendations: the government recommended that the court impose a sentence of fourteen years of imprisonment, while the petitioner argued for a sentence of eighty-five months of imprisonment. Id. at 2.

9

The court concluded that a below-guidelines sentence of one hundred months of incarceration followed by five years of supervised release was sufficient but not more than necessary to address the §3553 factors. Id. at 3. The court also ordered the petitioner to pay a special assessment of $400 and restitution of $11,214.72. Id. The court agreed to recommend that the Bureau of Prisons place the petitioner in a facility as close to Milwaukee as possible. Id.

The court entered judgment on May 3, 2019. Dkt. No. 103. The court's judgment reflected the sentence: sixteen months on Count Two, sixteen months on Count Three to run concurrently with the sentence imposed for Count Two, and sixteen months on Count Four to run concurrently with the sentences imposed for Counts Two and Three, and eighty-four months on Count Five (the §924(c) count) to run consecutively to the sentences imposed on Counts Two through Four, for a total sentence of one hundred months of imprisonment. Id. at 2. The court entered an amended judgment a week later, correcting the petitioner's middle initial. Dkt. No. 105. The petitioner did not appeal.

### B. Petitioner's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255 (Dkt. No. 1)

Fourteen months later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Walton v. United States, Case No. 20-cv-1051 (E.D. Wis.), Dkt. No. 1. Citing Davis, the motion asserts that "[t]his court must vacate the Petitioner's conviction under 924(c)(1)(a) due to the fact that a the predicate offense of Hobbs Act Robbery . . . no longer satisfies the 'crime of violence' definition used in 924(c)." Id. at 1.

## II. Analysis

### A. Standard

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. United States v. Davis

The petitioner says that the court must vacate his conviction under Davis, 139 S. Ct. 2319 (2019). Dkt. No. 1 at 3.

#### 1. *Timeliness*

28 U.S.C. §2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

11

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The petitioner filed his §2255 motion on July 13, 2020. Dkt. No. 1. The court entered judgement in the underlying criminal case on May 3, 2019. The court filed an amended judgment a week later. The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1). He does not assert newly discovered evidence under §2255(f)(4), or that an impediment prevented him from filing his motion under §2255(f)(2). That leaves §2255(f)(3), "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The United States Supreme Court decided United States v. Davis, __ U.S. __, 139 S. Ct. 2319 (2019) on June 24, 2019. At least one district court in the Seventh Circuit has concluded that Davis recognized a new right that applies retroactively on collateral review, Carter v. United States, No. 16-cv-02184, 2019 WL 4126074, at *5 (C.D. Ill. Aug. 29, 2019), as has the Eleventh

12

Circuit Court of Appeals, In re Hammoud, 931 F.3d 1032, 1037-1039 (11th Cir. 2019). The court will assume for the purposes of this decision only that Davis did recognize a new right and that it applies retroactively on collateral review. The court notes that the petitioner dated his §2255 motion June 22, 2020. Dkt. No. 1 at 10. If the petitioner filed his §2255 motion on that date, it would be timely, because he would have filed it within a year of the date of the Supreme Court's decision in Davis.

    2.    *Procedural Default*

While a claim must be timely, it also must be cognizable. For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017) (citing Hale v. United States, 710 F.3d 711, 713-14 (7th Cir. 2013)). "Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice." Delatorre, 847 F.3d at 843 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).

If the petitioner raised the claim on direct appeal, the "law of the case" doctrine dictates that a Circuit Court of Appeals' decision becomes binding when that defendant later raises the same claim through a §2255 motion to vacate, set aside or correct a sentence. Fuller v. United States, 398 F.3d 644,

648 (7th Cir. 2005) (citing United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986)).

The petitioner argues that his sentence and conviction violate Davis. Dkt. No. 1 at 3. Id. The petitioner raises this claim for the first time in the §2255 motion.

> A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir.2009). Likewise, a § 2255 appellant cannot raise for the first time on appeal a claim not presented to the district court in the § 2255 proceedings below. *Pierce v. United States*, 976 F.2d 369, 371 (7th Cir.1992). A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir.2013); *Gant v. United States*, 627 F.3d 677, 683 (7th Cir.2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir.2008).

McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).

Normally, the doctrine of procedural default would bar this claim because the petitioner did not raise it before this court or the Seventh Circuit. But the petitioner may overcome procedural default if he can show that he had cause for his failure to raise the issue earlier and actual prejudice. Cross v. United States, 892 F.3d 288, 294 (7th Cir. 2018) (citing Bousley, 523 U.S. at 622). The petitioner can show cause for his failure to raise the Davis argument before the trial court. "A change in the law may constitute cause for procedural default if it creates 'a claim that is "so novel that its legal basis is not reasonably available to [trial or appellate] counsel."'" Id. (citing Bousley, 523

14

U.S. at 622). The Supreme Court decided Davis on June 24, 2019—six months after the court accepted the petitioner's guilty plea and two months after the court imposed sentence. The Davis decision was not reasonably available to the petitioner prior to sentencing; he has stated cause for his default.

But the petitioner cannot show prejudice. Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crime.'" Davis, 139 S. Ct. at 2324. The statute defines a "crime of violence" in "two subparts—the first known as the elements clause, and the second [known as] the residual clause." Id. Section 924(c)(3)(A) is the "elements" clause; it defines a "crime of violence" as "an offense that is a felony" and "has as an element the use, or threatened use of physical force against the person or property of another." Section 924(c)(3)(B) is the "residual" clause, and defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In Davis the Supreme Court held that the "residual" clause—§924(c)(3)(B)—was unconstitutionally vague, because it required a judge to imagine the "ordinary" circumstances of whatever the underlying crime may have been and then "guess" whether that crime would, "by its nature," involve a substantial risk that physical force against the person or property of another might be used in the course of committing it. See Davis, 139 S. Ct. at 2325-26.

15

The petitioner argues that in Davis, the court held that §924(c)(3)(B) was unconstitutionally vague; he asserts that therefore, "[t]his court must vacate the Petitioner's conviction under 924(c)(1)(a), due to the fact that the predicate offense of Hobbs Act Robbery, 18 U.S.C. Section 1951(a), no longer satisfies the 'crime of violence' definition used in 924(c)." Dkt. No. 1 at 3.

The petitioner pled guilty to Counts Two, Three, Four and Five of the indictment. Counts Two, Three and Four charged the petitioner with Hobbs Act robbery. Count Five charged the petitioner with knowingly using, carrying and brandishing a firearm in connection with the Hobbs Act robbery underlying Count Four. Several times since the Supreme Court decided Davis, the Seventh Circuit Court of Appeals has rejected the argument that a Hobbs Act robbery is not a crime of violence under §924(c)(3)(A). See United States v. Brown, 973 F.3d 667, 697 (7th Cir. 2020); Oliver v. United States, 951 F.3d 841, 847 (7th Cir. 2020); Velez v. United States, 793 Fed. App'x 453, 454 (7th Cir. 2020); United States v. Ingram, 947 F.3d 1021, 1025-26 (7th Cir. 2020); United States v. Fisher, 943 F.3d 809, 815 (7th Cir. 2019); United States v. Fox, 783 Fed. App'x 630, 632 (7th Cir. 2019) ("[W]e have confirmed that a Hobbs Act robbery is a crime of violence under the still-valid 'elements clause' of §924(c)."); United States v. Rogers, 781 Fed. App'x 559, 560 (7th Cir. 2019); Haynes v. United States, 936 F.3d 683, 690 (7th Cir. 2019) ("Hobbs Act robbery is a categorical crime of violence under § 924(c) because it has as an element the actual, attempted, or threatened use of force.").

The Seventh Circuit has had opportunities since the Supreme Court's decision in <u>Davis</u> to change its position on whether Hobbs Act robbery constitutes a crime of violence under the elements clause of Section 924(c)(3)(A). It has not done so. Seventh Circuit decisions bind this court. The petitioner's conviction for Hobbs Act robbery is a crime of violence under the elements clause, Section 924(c)(3)(A). <u>Davis</u> does not entitle the petitioner to relief.

        3.    *Waiver*

Even if the petitioner could have shown that <u>Davis</u> entitled him to relief, the petitioner's express waivers of appellate and §2255 relief rights in his plea agreement bar relief. The Seventh Circuit has held that a waiver of §2255 relief in a plea agreement is enforceable, and that a court should treat it no differently than the waiver of a direct appeal. See <u>Jones v. United States</u>, 167 F.3d 1142, 1145 (7th Cir. 1999); <u>see also</u> <u>United States v. Perillo</u>, 897 F.3d 878, 882 (7th Cir. 2018) ("A 'voluntary and knowing waiver of an appeal is valid and must be enforced.'") (quoting <u>United States v. Sakellarion</u>, 649 F.3d 634, 638 (7th Cir. 2011)). "An appeal waiver does not prevent challenges to a sentence based on a constitutionally impermissible factor such as race, a sentence that exceeds the statutory maximum for the particular crime, a proceeding lacking a 'minimum of civilized procedure,' or ineffective assistance of counsel in negotiating the plea agreements." <u>United States v. Campbell</u>, 813 F.3d 1016, 1018 (7th Cir. 2016). A petitioner who waives his right to appeal may argue that he did not knowingly and voluntarily enter into the agreement.

17

Jones, 167 F.3d at 1145. Representations made to a court during a plea colloquy are presumptively true. Hurlow v. United States, 726 F.3d 958, 968 (7th Cir. 2013) (quoting United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)).

The plea agreement and the plea colloquy demonstrate that the petitioner acknowledged that he was guilty of both the Hobbs Act robberies and knowingly using, carrying and brandishing a firearm during the Hobbs Act robbery charged in Count Four. Because the court presided over both the change-of-plea hearing and the sentencing hearing, the court is satisfied that the petitioner entered into the agreement voluntarily, knowingly and intelligently. The petitioner now claims that his sentence violates Davis. That is not a basis for relief given his admissions in the plea agreement and at the plea colloquy and his waiver of his appellate rights. The petitioner's express plea waiver bars this claim, even though the waiver predated Davis. Oliver v. United States, 951 F.3d 841, 845-46 (7th Cir. 2020). Because the petitioner has not alleged that his attorney was ineffective in negotiating the appellate waiver and because he cannot demonstrate that his plea was not knowing or voluntary, the petitioner is not entitled to relief on his Davis claim.

The court will deny the §2255 motion.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of

18

appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the §2255 motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence plainly does not entitle him to relief under 28 U.S.C. §2255(a).

## IV. Conclusion

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED with prejudice**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 28th day of May, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**